IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFCM, INC.; and FO-FARMER'S OUTLET, INC.,<br><br>    Plaintiffs,<br><br>   v.<br><br>ELITE GLOBAL FARMING AND LOGISTICS, INC; RICHARD ESCAMILLA, SR.; JOSE ESCAMILLA; JOHN CREIGHTON; STEPHEN WYRICK; KENT CURLEY; DAVID GATTIS; AMBER RIGOR; and RICHARD ESCAMILLA, JR.,<br><br>    Defendants.<br>_____/ | No. C 11-4677 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Docket No. 47) |

Moving Defendants John Creighton, Kent Curley and David Gattis (hereinafter, Defendants) move to dismiss all claims made against them by Plaintiff AFCM, Inc., as well as AFCM's claim for damages and penalties under the California Food and Agriculture Code (FAC) §§ 55631, et seq., and its request for attorneys' fees.[1]  Plaintiffs oppose the motion.  Having considered the arguments presented by the parties in their papers and at the hearing, the Court DENIES Defendants' motion to dismiss.

BACKGROUND

The following facts are taken from Plaintiffs' complaint and the documents attached thereto.

---

[1] In this motion, Defendants do not challenge AFCM's claims against the non-Moving Defendants or Plaintiff FO-Farmer's Outlet, Inc.'s claims against any Defendants, including its claim against Creighton for breach of contract.  FO-Farmer's Outlet does not bring any claims against Curley or Gattis.

Creighton, Curley and Gattis are managers or owners of Elite Global Farming and Logistics, Inc., a corporation in the business of growing, harvesting, marketing and selling perishable agricultural commodities. Compl. ¶¶ 5, 8, 10-11. AFCM is a corporation in the business of growing these commodities. Id. at ¶ 3.

In late October or early November 2010, AFCM and Elite entered into an oral agreement to grow jointly certain crops for the 2010-11 farming season. Id. at ¶ 23. In addition, Elite agreed to harvest, market and sell the crops and to distribute proceeds from the sale of the crops to AFCM. Id.

AFCM performed its duties under the oral agreement. Id. at ¶ 24. Elite harvested, marketed, sold and delivered the crops to its customers and received payment in full from them. Id. However, Elite failed to pay AFCM its share of the profits. Id. at ¶ 25.

AFCM alleges that, under the terms of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. §§ 499e, et seq., Elite is obliged to hold these proceeds in trust for AFCM until full payment has been made. On July 26, 2011, AFCM sent a written notice of intent to preserve PACA trust benefits in accordance with the provisions of 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46. Compl. ¶ 26.

On September 21, 2011, Plaintiffs filed the instant action against Creighton, Curley and Gattis, along with Defendants Elite, Richard Escamilla, Jr., Richard Escamilla, Sr., Jose Escamilla, Amber Rigor and Stephen Wyrick. Docket No. 1. Default has been

2

entered as to all Defendants except Creighton, Curley and Gattis. See Docket Nos. 16, 21, 29, 35 and 43.

AFCM asserts the following causes of action against Creighton, Curley and Gattis: (1) enforcement of PACA trust provisions and disgorgement (seventh cause of action); (2) violation of the PACA and the FAC for failure to account and pay promptly (eighth cause of action); (3) conversion (ninth cause of action); (4) unjust enrichment (tenth cause of action); (5) constructive trust and disgorgement (eleventh cause of action); (6) declaratory judgment (twelfth cause of action); and (7) injunctive relief (thirteenth cause of action). In the instant motion, Defendants seek to dismiss each of these claims, and AFCM's requests for damages, penalties and attorneys' fees.

On February 23, 2012, the Court held a hearing on Defendants' motion to dismiss. At the hearing, the Court gave the parties permission to submit short supplemental briefs within two days, regarding certain legal authority that was newly presented during the hearing. On February 25, 2012, Plaintiffs submitted a three-page supplemental brief. Defendants have not filed a supplemental brief.

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the

3

complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

DISCUSSION

I. AFCM's claims under the PACA

A. PACA Statutory Trust

AFCM alleges a violation of section 5(c) of the PACA, 7 U.S.C. § 499e(c). Congress added this section to the PACA in 1984 to deal with the "burden on commerce in perishable agricultural commodities . . . caused by financing arrangements under which

4

commission merchants,[2] dealers, or brokers, who have not made payment" for the commodities "give lenders a security interest in" the commodities or proceeds from their sale. 7 U.S.C. § 499e(c)(1). To address this problem, Congress created as a remedy "a statutory trust in which essentially all produce, produce-derived revenues or products would constitute the trust res until all produce suppliers are paid in full." In re Country Harvest Buffet Restaurants, Inc., 245 B.R. 650, 652 (B.A.P. 9th Cir. 1999).

> Specifically, the statute provides,
>
> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). The statute also creates certain notice requirements to which a beneficiary must adhere to preserve the trust benefits. 7 U.S.C. §§ 499e(c)(3)-(4).

Dissipation of trust assets, defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions," is unlawful. 7 C.F.R. § 46.46(a)(2), (d).

---

[2] "The term 'commission merchant' means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. 499a(5).

5

The Ninth Circuit has held that "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable." Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997).

Under the terms of the statute, to show a perfected PACA trust interest, AFCM must show:

(1) there was a transaction in interstate commerce involving perishable agricultural commodities;
(2) these commodities were received by a commission merchant, dealer or broker;
(3) AFCM was a supplier or seller of such commodities or an agent involved in the transaction;
(4) AFCM has not received full payment; and
(5) AFCM preserved its trust rights by giving proper notice to Elite.

7 U.S.C. §§ 499e(c).

Defendants argue that a PACA trust claim arises only when the trust beneficiary sells perishable agricultural products to a buyer, who fails to pay in full, and that a joint venture arrangement, such as the one alleged between AFCM and Elite, cannot give rise to a statutory trust under the PACA. AFCM responds that a sales transaction is only one type of transaction that is covered by the PACA and that the PACA is not as limited as Defendants claim.

Plaintiffs are correct. The PACA statutory language is broad, and specifically states that the trust beneficiaries are "unpaid suppliers, sellers, or agents." 7 U.S.C. § 499e(c). The statute describes commodities that are "received" in a transaction, which the regulations define broadly as "when the

6

buyer, receiver or agent gains ownership, control, or possession" of them. See 7 U.S.C. § 499e(c); 7 C.F.R. 46.46(a)(1).

The legislative history for the addition of the statutory trust remedy confirms that such a trust may arise in the type of relationship alleged here. The report of the House Committee on Agriculture recommending approval of the amendment stated in part,

> In the marketing of perishable agricultural commodities, there are many varied business arrangements resulting in the movement of these commodities from the farm to the shipping point and to destination markets and ultimately to the consumer. They include but are not limited to consignments, joint ventures, and grower agency arrangements. <u>In a joint venture, it is common for one of the joint ventures [sic] to gain ownership, possession or control of the goods for the purposes of marketing the goods. In that situation, a trust relationship arises as between the joint venture partner which has marketing responsibility and all other joint venturers.</u> Another trust relationshp [sic] is established in the person or entity which gains ownership, possession or control of the goods from the joint venturers.

H. Rep. No. 98-543, 98th Cong., 1st Sess. 5 (1983) (emphasis added). Thus, Congress specifically considered the type of transaction at issue here and intended that it would be encompassed within the statutory trust remedy.

While Defendants cite several cases in support of their argument that PACA claims are limited to sales transactions, those cases arose out of sales transactions and the courts did not discuss whether other types of transactions are covered by the PACA. See, e.g., Family Tree Farms, LLC v. Alfa Quality Produce, Inc., 2009 U.S. Dist. LEXIS 16940 (E.D. Cal.); C.H. Robinson Co. v. Marina Produce Co., Inc., 2007 U.S. Dist. LEXIS 3098 (N.D. Cal.).

7

At the hearing, Defendants argued for the first time that AFCM could not be a PACA trust beneficiary as a joint venturer, because AFCM was not licensed under PACA. In support of their argument, Defendants relied upon Alvaro v. Rey Rey Produce SFO, Inc., 2008 U.S. Dist. LEXIS 14747 (N.D. Cal.), in which the court addressed whether a joint venturer asserting a PACA trust claim had given notice sufficient to establish benefits under such a trust. Under the PACA, there are two ways that a trust beneficiary may do this. First, an "unpaid supplier, seller, or agent" may give "written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker." 7 U.S.C. § 499e(c)(3). Second, "a licensee" may use "ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust," so long as the billing and invoice statements contain certain statutorily-mandated language. 7 U.S.C. § 499e(c)(4). In Alvaro, the plaintiff alleged that he used the second of these two methods, and thus the court found that, because he was not a licensee, he had failed to state a PACA trust claim. 2008 U.S. Dist. LEXIS 14747, at *6-8. In contrast, Plaintiffs allege here that AFCM gave notice of its PACA trust claim in accordance with the first provision, see Compl. ¶ 26, which may be used by any "unpaid supplier, seller, or agent," not just PACA licensees.

Accordingly, the Court DENIES Defendants' motion to dismiss AFCM's seventh, twelfth and thirteenth causes of actions to enforce the PACA trust and for declaratory and injunctive relief based on the establishment of a PACA trust.

8

B. Failure to Account and Pay Promptly under the PACA

In its eighth cause of action, AFCM alleges that Defendants failed to account and make full payment properly for the perishable goods under the PACA and the California FAC. Defendants again argue that the PACA is not applicable, because the agreement between AFCM and Elite was not for the sale and purchase of produce. Defendants do not address or challenge the FAC claim in their motion to dismiss.

Section 499b(4) of the PACA prohibits "unfair conduct" including

> For any commission merchant, dealer, or broker . . . to fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had; or to fail, without reasonable cause, to perform any specification or duty, express or implied, arising out of any undertaking in connection with any such transaction; or to fail to maintain the trust as required under section 5(c).

7 U.S.C. § 499b(4). While the implementing regulations do not define the phrase "any transaction," they do refer to and define certain kinds of transactions, including a "joint account transaction," which means "a produce transaction in commerce in which two or more persons participate under a limited joint venture arrangement whereby they agree to share in a prescribed manner the costs, profits, or losses resulting from such transaction." 7 C.F.R. § 46.2(s). Further, the regulations explain the meaning of the statutory phrases "truly and correctly to account," "account promptly" and "full payment promptly" in relation to such a joint account transaction. See 7 C.F.R. §§ 46.2(y)(2), (z)(2), (aa)(1)-(2). These regulations would be

9

rendered meaningless if joint venture arrangements were read to be categorically excluded from the statute.

Administrative decisions from the United States Department of Agriculture support this conclusion. In <u>Joanne M. Eady v. Eady & Associates</u>, the judicial officer described an early decision considering a "situation [that] involved no purchase and sale transaction as between complainant and respondent but rather concerned produce which was jointly owned by the parties," where the Secretary of Agriculture had held that this "joint venture which was directly concerned with participation in the proceeds from the sale of perishable agricultural goods" was a transaction under the meaning of the PACA, given the broad "any transaction" language of the statute. 37 Agric. Dec. 1589 (U.S.D.A. 1978) (summarizing <u>O.S. Lloyd v. E.F. Dellartim</u>, PACA Docket No. 366 (U.S.D.A. 1933)). In <u>Eady</u> itself, also involving "a joint venture which was directly concerned with participation in the proceeds from the sale of perishable agriculture commodities," the judicial officer found that the "undertaking to remit a percentage of the net proceeds from the sale of the perishable agricultural commodities involved in this proceeding is an undertaking" within the meaning of this section as well. <u>Id.</u> at 1593.

Accordingly, the Court DENIES Defendants' motion to dismiss AFCM's eighth cause of action.

II.  AFCM's conversion claim

Defendants argue that AFCM's ninth cause of action for conversion should be dismissed, because the conversion claim is predicated on a breach of contract, which, under California law, cannot be brought as a tort unless there is also a breach of a

10

legal duty. However, as Plaintiffs point out, AFCM alleges that Defendants breached their legal duty to pay the sales proceeds to AFCM under the PACA and not to dissipate the PACA trust assets. Courts have found that conduct alleged to violate the PACA statute may also constitute conversion under California law. See, e.g., Onions Etc., Inc. v. Z & S Fresh, Inc., 2011 U.S. Dist. LEXIS 89184, at *13 (E.D. Cal.); Kingsburg Apple Packers Inc. v. Ballantine Produce Co., 2011 U.S. Dist. LEXIS 32111, at *18-21 (E.D. Cal.).

Accordingly, the Court DENIES Defendants' motion to dismiss AFCM's conversion claim.

III. AFCM's unjust enrichment claim

Defendants argue that AFCM's tenth cause of action for unjust enrichment should be dismissed, because unjust enrichment is not a cause of action but rather a general principle underlying various doctrines and remedies.

"California courts are split as to whether there is an independent cause of action for unjust enrichment." Cortez v. New Century Mortg. Corp., 2012 U.S. Dist. LEXIS 13469, at *25 (N.D. Cal.) (citing Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (applying California law)). "One view is that it is a general principle underlying various legal doctrines and remedies." Id. (citing McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004)). In McBride, the court construed a "purported cause of action for unjust enrichment as an attempt to plead a cause of action giving rise to a right to restitution." 123 Cal. App. 4th at 388. The court recognized various potential bases for a cause of action seeking restitution, including as an

11

alternative to breach of contract damages when the parties had an express contract which was procured by fraud or is otherwise unenforceable for some reason. Id.

"Another view is that it is a cause of action and its elements are receipt of a benefit and unjust retention of the benefit at the expense of another." Id. at *25-26 (citing Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000)). "Determining whether it is unjust for a person to retain a benefit may involve policy considerations." Id. at *26 (citing First Nationwide Sav. v. Perry, 11 Cal. App. 4th 1657, 1663 (1992)).

Here, AFCM has alleged that it entered into an oral contract with Elite, in which Elite agreed to market and sell crops that AFCM and Elite grew together and of which they shared ownership. AFCM alleges that Elite received payment from merchants for the sale of those crops but has failed to share the proceeds with AFCM, as promised. Accordingly, the Court finds that AFCM has stated an unjust enrichment claim under either view and DENIES Defendants' motion to dismiss the tenth cause of action.

IV. AFCM's constructive trust claim

Defendants move to dismiss AFCM's eleventh cause of action for a constructive trust, claiming that AFCM has not alleged facts to satisfy a required element, its right to the property in which it seeks to establish a constructive trust. Defendants argue that AFCM's constructive trust claim is based on two theories, fraud and violation of the PACA statutory trust provisions, and that AFCM has not adequately plead either. Defendants make no new substantive arguments related to the PACA trust claim and instead incorporate their previous arguments by reference.

12

In response, Plaintiffs argue that AFCM has adequately plead an entitlement to property under the PACA statutory trust provisions and that Defendants have violated its rights thereto. At the hearing, Plaintiffs clarified that AFCM's constructive trust claim is predicated only on this theory and not upon fraud.

For the reasons previously discussed, the Court finds that AFCM has adequately alleged a constructive trust claim predicated on violation of the PACA statutory trust provisions and DENIES Defendants' motion to dismiss AFCM's eleventh cause of action to the extent that it is based on this theory. Defendants' motion to dismiss this claim, to the extent that it is predicated on fraud, is DENIED as moot in that AFCM is not making such a claim.

V.   AFCM's request for damages and penalties under the FAC

Defendants move to dismiss AFCM's request for damages and penalties under the FAC. Defendants state that AFCM did not explicitly allege a violation of the FAC in the complaint. Defendants argue that AFCM cannot allege a claim for a producer's lien under the FAC, because Elite is not a "processor" within the FAC, because sections 55407 and 55631 of the FAC apply to sales transactions covering produce, and because there is no allegation that Elite took farm products from AFCM for processing or manufacturing as required by these statutes.

However, Defendants are mistaken about the allegations made by AFCM in the complaint. As Plaintiffs point out in their opposition, Plaintiffs allege in the complaint that "Elite is a California dealer of farm products, and is subject to licensure by the California Department of Food & Agriculture Market Enforcement Branch, and to the provisions of the California Food and

13

Agricultural Code (FAC)." Compl. ¶ 5 (emphasis added). Further, in its eighth cause of action, AFCM alleges that "Elite's failure to pay for the Crops (which constitute farm products under the FAC) in the time and manner specified in the Agreement, is a violation of FAC §§ 56302 and 56603." Id. at ¶ 70.

Because Defendants have made no argument that AFCM has failed adequately to plead that it is a dealer of farm products under the FAC or that AFCM has failed to state a claim under FAC §§ 56302 and 56603, the Court DENIES Defendants' motion to dismiss AFCM's request for damages and penalties under the FAC.

VI. AFCM's request for attorneys' fees

Defendants also move to dismiss AFCM's request for attorneys' fees.

"Unlike the British legal system rule, in which the winner automatically gets attorneys' fees, the rule in American courts, commonly known as the American Rule, looks with disdain upon awarding attorneys' fees unless an independent basis exists for the award." Middle Mt. Land & Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1222-1225 (9th Cir. 2002) (citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 257-59 (1975)). Courts repeatedly state that a PACA litigant may recover such fees when they have a contractual right to them. See Middle Mt. Land, 307 F.3d at 1222-1225 (contractual rights to attorneys' fees may be included in a PACA trust claim); Country Best v. Christopher Ranch, LLC, 361 F.3d 629, 631-633 (11th Cir. 2004) (same); JC Produce, Inc. v. Paragon Steakhouse Restaurants, Inc., 70 F. Supp. 2d 1119, 1123 (E.D. Cal. 1999) (same). The Ninth Circuit has also "held that a court should award attorneys' fees

14

to a PACA claimant whose litigation efforts 'are directly responsible for the availability of the funds from the statutorily created trust,'" under the common fund exception to the American Rule. Middle Mt. Land, 307 F.3d at 1225 (quoting In re Milton Poulos, 947 F.2d 1351, 1353 (9th Cir. 1991) (awarding attorneys' fees where the litigation efforts resulted in the trust being declared "valid and enforceable, thereby permitting the funds to be dispersed among the trust claimants")). However, "where a PACA claimant did not create a common trust," an award of attorneys' fees is "inappropriate." Id. (citing Golman-Hayden Co. v. Fresh Source Produce Inc., 217 F.3d 348, 352-353 (5th Cir. 2000)).

    Here, it is not clear whether Plaintiffs will ultimately be able to prove an entitlement to attorneys' fees. However, because Plaintiffs may be able to establish facts sufficient to support such an award, the Court DENIES Defendants' motion to dismiss the attorneys' fees request.

## CONCLUSION

    For the reasons set forth above, the Court DENIES Defendants' motion to dismiss (Docket No. 47).

    IT IS SO ORDERED.

Dated: 4/16/2012

CLAUDIA WILKEN
United States District Judge

15