IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFCM, INC, et al., | No. C -11-04677 CW (EDL) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| ELITE GLOBAL FARMING AND LOGISTICS, INC, et al., | |
| Defendants. | |

On September 21, 2011, Plaintiffs AFCM, Inc. and FO-Farmer's Outlet filed a complaint against Defendants Elite Global Farming and Logistics, Inc., Richard Escamilla, Sr. Jose Escamilla, Stephen Wyrick and Richard Escamilla, Jr., alleging claims for breach of contract and violation of the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. § 499b(4).[1] Defendants were served with the summons and complaint in this matter. See Declaration of Effie Anastassiou Decl. ¶ 3. Defendants failed to answer the complaint or otherwise defend the action. Id.

Upon Plaintiffs' request, under Federal Rule of Civil Procedure 55(a), the Clerk of this Court entered Defendant Richard Escamilla, Jr.'s default on November 2, 2011 (see Docket No. 16), Defendant Elite's default on November 8, 2011 (see Docket No. 21), Defendant Richard Escamilla, Sr.'s default on November 9, 2011 (see Docket No. 29), Defendant Jose Escamilla's default on November 16, 2011 (see Docket No. 35), and Defendant Stephen Wyrick's default on November 30, 2011 (see Docket No. 43). By their default, Defendants are deemed to have admitted the well-pleaded averments of the complaint except those as to the amount of damages. See Fed. R. Civ. P.

---

[1] On May 8, 2012, Plaintiffs settled with Defendants John Creighton, Kent Curley, David Gattis and Amber Rigor. Plaintiffs and the settling Defendants entered into a Stipulated Request for Dismissal with Prejudice, and the settling Defendants were dismissed by court order on May 22, 2012. The only Defendants remaining in this case are the defaulting Defendants.

8(b)(6).

On May 25, 2012, Plaintiffs filed a Motion for Default Judgment against Defendants. Plaintiff seeks judgment against Defendant Elite in the amount of $382,630.79, Defendant Escamilla Sr. in the amount of $241,692.75, Defendants Jose Escamilla, Wyrick and Escamilla Jr. in the amount of $182,972.85. On May 30, 2012, this matter was referred to this Court for a Report and Recommendation. See Docket No. 69.

The Court held a hearing on July 10, 2012. Plaintiffs appeared through counsel Effie Anastassiou. There was no appearance for Defendants. For the reasons stated at the hearing and set forth below, it is recommended that the Court grant Plaintiff's motion and enter default judgment as described below.

**Background**

Plaintiff AFCM is a California corporation in the business of growing perishable agricultural commodities. Compl. ¶ 3. Plaintiff FO-Farmer's Outlet ("FFO") is a California corporation in the business of selling cartons, boxes, bags, pallets and other packaging items to the farming industry for use in packaging and shipping fresh produce. Compl. ¶ 4.

On or about late October or early November 2010, AFCM and Defendant Elite entered in an oral joint growing agreement whereby AFCM and Elite agreed to jointly participate in the growing of approximately 130 acres of crops for the 2010/2011 farming season in Imperial Valley, California ("crop growing agreement"). Compl. ¶ 23. Elite also agreed to harvest, market and sell the crops and then Elite agreed to distribute the proceeds from the sale of the crops to AFCM, based on its ownership in the crops. Compl. ¶ 23; Ex. A. AFCM alleges that it performed all of its duties and obligations under the crop growing agreement, and that Elite harvested, marketed, sold and delivered the crops to its customers, and the customers took possession and delivery of the crops without complaint. Compl. ¶ 24. AFCM alleges that Elite received payment for the crops from its customers, but breached the crop growing agreement by failing to make the promised payments to AFCM for AFCM's portion of the crop proceeds. Compl. ¶¶ 24-25. On July 26, 2011, AFCM sent a written notice of intent to preserve PACA trust benefits in accordance with 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46.

2

Also pursuant to the terms of the agreement between AFCM and Elite, Elite was required to provide weeding services in connection with the growing of the crops. Compl. ¶ 29. Elite hired Martin G. Velasquez, doing business as Vel Packer, to provide the weeding services for the crops. Compl. ¶ 29. Between January 2011 and March 2011, Elite and Vel Packer entered into written agreements whereby Vel Packer agreed to provide weeding services to Elite for the crops and Elite agreed to pay Vel Packer for those services ("weeding services agreement"). Compl. ¶ 30; Ex. C. As of August 31, 2011, Vel Packer assigned its rights, title and interest to collect the monies due to Vel Packer from Elite to AFCM. Compl. ¶ 31; Ex. D. Vel Packer performed the weeding services under the agreement with Elite, but Elite breached the weeding services agreement by failing and refusing to pay for the services. Compl. ¶¶ 32-33.

Between March 2011 and June 2011, Elite and FFO entered into written agreements whereby FFO agreed to sell produce packaging to Elite and Elite agreed to pay FFO for the packaging ("packaging agreement"). Compl. ¶ 36; Ex. E. FFO provided the packaging to Elite. Compl. ¶ 37. On or about June 3, 2011, Escamilla Sr. personally orally agreed to a payment plan to pay off the amount owed by Elite to FFO pursuant to the packaging agreement by making weekly payments. Compl. ¶ 39; Ex. G. Payment was initially made pursuant to the payment plan, but FFO has not received a weekly payment since June 13, 2011. Compl. ¶ 39.

AFCM rented irrigation pipe from the owner of the pipe, which pipe was used to water the crops being jointly grown by AFCM with Elite. Compl. ¶ 43. During the time between November 2010 and March 2011, while Elite was harvesting the crops, a worker for Elite ran over portions of the pipe with a vehicle and/or a tractor, causing serious damage to the pipe. Compl. ¶ 44; Ex. H. On or about May 17, 2011, Escamilla Sr. verbally acknowledged that Elite was at fault for the damages caused to the pipe and agreed that Escamilla Sr. and Elite would be responsible for the damages caused to the pipe ("pipe repair agreement"). Compl. ¶ 45. As of the date of the complaint, AFCM had not received any payment to repair the damages caused to the pipe. Compl. ¶ 45; Ex. I.

**Discussion**

A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. See Fed. R. Civ. P. 55(B)(2); 50 U.S.C. § 521(b)(1).

3

Defendants are not minors, incompetent persons, or in the military. See Anastassiou Decl. ¶¶ 7-8.

The general rule is that, upon default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977)). Necessary facts not contained in the pleadings, and claims which are legally insufficient, however, are not established by default. Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir.1992). Rule 55(b)(2) allows, but does not require, the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment. Action S.A. v. Marc Rich & Co. Inc., 951 F.2d 504, 508 (2nd Cir. 1991). Relief is limited to the plaintiff's specific demand in his complaint. Fed. R. Civ. P. 54(c). Entry of default judgment requires the consideration of several factors, including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, the Eitel factors weigh in favor of entry of default judgment. First, Plaintiffs' breach of contract claims appear to have merit and the complaint is sufficient to state a claim for breach of contract. Plaintiff seeks default judgment on four breach of contract claims. Plaintiff's first claim alleges breach of contract against Elite for failure to pay for the crops that AFCM and Elite jointly grew. Plaintiff's second claim alleges breach of contract against Elite for failing to pay the Vel Packer invoices for weeding services. Plaintiff's third claim alleges breach of contract against Elite and Escamilla Sr. for failing to pay FFO for packaging pursuant to the terms of the FFO invoices. Plaintiffs' fourth claim alleges that Elite and Escamilla Sr. breached their agreement to pay AFCM for damages caused to rented irrigation pipe while the pipe was in the custody and control of Elite.

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Security Pac. Bus. Credit, Inc.,

4

222 Cal. App. 3d 1371, 1388 (1990). Here, as described in detail above in connection with the crop growing agreement, Plaintiffs allege that they had a crop growing agreement with Elite, that they performed under the agreement, and that Elite breached that agreement by failing to pay AFCM for the amounts due for the crops sold pursuant to the agreement. Compl. ¶¶ 21-27. Also, as described above with respect to the weeding services agreement, Plaintiffs allege that Elite contracted with Vel Packer for weeding services, and that AFCM accepted assignment of Vel Packer's rights under the weeding services agreement. Compl. ¶¶ 29-31. Plaintiffs allege that Vel Packer provided the weeding services, but that Elite did not pay for the services. Compl. ¶¶ 32-33. With respect to the packaging agreement, as described fully above, Plaintiffs allege that Elite contracted with FFO to provide packaging products, FFO provided the packaging, and neither Elite nor Escamilla Sr., who personally agreed to guaranty payment of the amounts due, paid the amounts due under the packaging agreement. Compl. ¶¶ 35-41. Finally, as described above, Plaintiffs allege that Elite damaged AFCM's rented irrigation pipe, and that Elite and Esamilla Sr. personally agreed to pay for the damages, yet they have failed to do so. Compl. ¶¶ 42-46. For each claim of breach of contract, Plaintiffs allege that they suffered damages. Compl. ¶¶ 27, 34, 41, 47.

Plaintiffs' PACA claim appears to have merit and the Complaint is sufficient to state a claim for violation of PACA. PACA makes it unlawful for any commission merchant, dealer, or broker in connection with any transaction in interstate or foreign commerce to "fail or refuse truly and correctly to account and make full payment promptly in respect of any transaction in any [perishable commodity] to the person with whom such transaction is had" or "fail to maintain the trust as required under section 499e(c)." 7 U.S.C. § 499b(4). Section 499e(c) requires a trustee to hold any commodities and receivables or proceeds from the sale of such commodities in trust for the benefit of all unpaid suppliers or sellers until full payment of the sums owing have been received by the supplier or seller. See 7 U.S.C. § 499e(c)(2) ("(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents

5

1 involved in the transaction, until full payment of the sums owing in connection with such
2 transactions has been received by such unpaid suppliers, sellers, or agents. Payment shall not be
3 considered to have been made if the supplier, seller, or agent receives a payment instrument which is
4 dishonored."); see also 7 C.F.R. § 46.46(c)(1) ("(c) Trust benefits. (1) When a seller, supplier or
5 agent who has met the eligibility requirements of paragraphs (e)(1) and (2) of this section, transfers
6 ownership, possession, or control of goods to a commission merchant, dealer, or broker, it
7 automatically becomes eligible to participate in the trust. Participants who preserve their rights to
8 benefits in accordance with paragraph (f) of this section remain beneficiaries until they are paid in
9 full.").

10 Under PACA, a commission merchant, dealer, or broker that violates any provision of
11 section 449b shall be liable for the full amount of damages sustained in consequence of such
12 violation. See 7 U.S.C. § 499e(a). "'PACA liability attaches first to the licensed seller of perishable
13 agricultural commodities. If the seller's assets are insufficient to satisfy the liability, others may be
14 found secondarily liable if they had some role in causing the corporate trustee to commit the breach
15 of trust.'" Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir.1997) (citing Shepard v. K.B.
16 Fruit & Vegetable, Inc., 868 F.Supp. 703, 706 (E.D. Pa.1994)). As such, "individual shareholders,
17 officers, or directors of a corporation who are in a position to control PACA trust assets, and who
18 breach their fiduciary duty to preserve those assets, may be held personally liable under the Act."
19 Sunkist, 104 F.3d at 283 ("An individual who is in the position to control the trust assets and who
20 does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable
21 for that tortious act.... [A] PACA trust in effect imposes liability on a trustee, whether a corporation
22 or a controlling person of that corporation, who uses the trust assets for any purpose other than
23 repayment of the supplier.") (internal citation omitted).

24 Further, it is unnecessary for a person who exercises control over a PACA license to have the
25 title of officer or director; if the person has "officer-like control" over the PACA licensee then that
26 person can be held liable for the PACA licensee's debt, regardless of the person's official title. See
27 Andrew Smith Co. v. Paul's Pak, Inc., 2009 U.S. Dist. LEXIS 65509, at *4 (N.D. Cal. 2009)
28 ("Although Sunkist Growers does not set forth the exact parameters of control necessary to satisfy

6

the standard, Andrew Smith here pleads facts sufficient to state a claim that the Church Defendants exerted officer-like control over the actions of Paul's Pak and Premium Fresh."). PACA also requires the unpaid supplier, seller, or agent to give written notice of intent to preserve the benefits of the trust. See 7 U.S.C. § 499e(c)(3),(4).

Under the terms of the statute, to show a perfected PACA trust interest, Plaintiffs must establish: (1) there was a transaction in interstate commerce involving perishable agricultural commodities; (2) these commodities were received by a commission merchant, dealer or broker; (3) AFCM was a supplier or seller of such commodities or an agent involved in the transaction; (4) AFCM has not received full payment; and (5) AFCM preserved its trust rights by giving proper notice to Elite. See 7 U.S.C. §§ 499e(c); see also In re Country Harvest Buffet Restaurant, Inc., 245 B.R. 650, 653 (9th Cir. 2000).

Here, Plaintiffs allege that Elite is in the business of growing, harvesting, marketing and selling perishable agricultural commodities in interstate commerce to buyers of produce. Compl. ¶ 5. The crops at issue were perishable agricultural commodities, including lettuce and spinach. Compl. ¶ 23; Ex. A. Plaintiffs also allege that Elite is licensed under PACA, 7 U.S.C. § 499c, and has operated as a dealer in perishable commodities within the meaning of PACA, 7 U.S.C. § 499a(6). Compl. ¶ 5. Plaintiffs allege that Elite received the crops by virtue of having the responsibility under the crop growing agreement to harvest, market and sell the 130 acres of crops on behalf of AFCM. Compl. ¶ 23. Plaintiffs allege on information and belief that Escamilla Sr., Jose Escamilla, Wyrick, and Escamilla Jr. were managers and/or direct or indirect owners of Elite and were statutory trustees, or responsibly connected parties, under PACA in a position to control the trust assets that are the subject of the action. Compl. ¶¶ 6, 7, 9, 13, 16. Plaintiffs allege that Escamilla Sr., Escamilla Jr., Jose Escamilla, and Wyrick held PACA trust fund assets as trustees for the beneficial trust of Plaintiffs and are personally liable to Plaintiffs for the dissipation of the PACA trust assets. Compl. ¶¶ 18, 69; Angulo Decl. ¶¶ 6 (stating that the individual Defendants are responsibly connected to Elite); Ex. 13. Plaintiffs allege that Defendants failed to pay Plaintiffs pursuant to the crop growing agreement. Compl. ¶¶ 26-27. Plaintiffs allege that they gave written notice of intent to preserve the benefits of the trust in its invoices to Defendants. Compl. ¶ 26;

Angulo Decl. ¶ 5(A)(iii). Plaintiffs allege that Elite's accounts receivable collected pursuant to the crop growing agreement are being used to pay debts owed to unknown third parties who are not PACA trust beneficiaries and/or are being transferred to the responsibly connected parties. Compl. ¶ 17. Plaintiffs have satisfied the statutory requirements under PACA, and they are entitled to relief for all unpaid invoices.

The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiffs would likely be without a remedy. This is because if Defendants do not appear in court, Plaintiffs have no method of addressing this matter. See Pepsico, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Second, because Defendants did not file answers to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts. Third, the sum of money at stake in this action is proportionate; the amount represents the total sum owed under contracts by Plaintiffs, after which Defendants did not comply with their obligations under PACA, and for damages to irrigation pipe. Finally, there is no evidence that Defendants' default was due to excusable neglect.

**Damages**

Plaintiffs have the burden of proving damages through testimony or written declaration or affidavit. Plaintiffs have submitted the declaration of Thomas Angulo, the president of AFCM, Inc. and FFO. Angulo attested to the amounts owed by Defendants and attached the invoices to support those amounts. First, Angulo stated that the principal amount due under the crop growing agreement was $167,188.43, that interest in the amount of 10% per annum, or $13,833.12 was also due under the agreement, and that AFCM is also entitled to recover penalties on the past due amounts under the California Department of Food & Agricultural Code section 56620 in the amount of $1,951.30 See Angulo Decl. ¶ 5(A)(i)-(vi); Ex. 1, 3. A total of $182,972.85 is due under the crop growing agreement. Id. Second, Angulo stated that the principal amount due under the weeding services agreement was $122,005.60 and that interest was also due in the amount of $18,929.44. Angulo Decl. ¶ 5(A)(vii)-(xi); Ex. 6. The total amount due under the weeding services agreement is $140,935.04. Id. Third, Angulo stated that the principal amount due under the packaging agreement

8

1  was $47,303.95 after some initial payments had been made, and that late charges had accrued in the
2  amount of $6,299.12.  Angulo Decl. ¶¶ 5(B)(i)-(iii); Ex. 10-12.  The total due under the packaging
3  agreement is $53,603.07.  Id.  Fourth, Angulo stated that the pipe had been repaired at a cost of
4  $4,890.40 and that interest had accrued on that unpaid balance from December 6, 2011 in the
5  amount of $226.43, so that a total of $5,116.83 is owed for pipe repair.  Angulo Decl. ¶¶ 5(A)(xii)-
6  (xvi).

7        Thus, according to the complaint, and corroborated by the invoices and statements attached
8  to the Angulo declaration, Defendants failed to pay Plaintiffs a total of $382,627.79 under all the
9  four agreements.  Having reviewed the complaint, and all of the materials filed in support of the
10 motion for default judgment, the Court finds that Plaintiff has established that Defendants are liable
11 for this amount, and recommends that Plaintiffs recover a total of $382,627.79 from Defendants.
12 Plaintiffs have alleged that Elite has failed to "maintain the trust assets and to keep them available to
13 satisfy Elite's obligations to AFCM."  Compl. ¶ 64.  Thus, because Elite's assets are alleged to be
14 insufficient to satisfy the liability, the responsibly connected parties, that is, the individual
15 Defendants, are secondarily liable because they are alleged to have had a role in causing Elite to
16 commit the breach of trust.  See Compl. ¶ 69 ("Accordingly, Elite and the Responsibly Connected
17 Parties have breached their duties to account for any PACA trust assets they have received from
18 Elite and have diverted PACA trust assets to themselves and/or to other third parties, resulting in the
19 failure to pay the PACA trust assets to the rightful owner, AFCM. . . ."); Sunkist Growers, Inc., 104
20 F.3d at 283 ("The unanimous conclusion of the cases is that 'PACA liability attaches first to the
21 licensed seller of perishable agricultural commodities. If the seller's assets are insufficient to satisfy
22 the liability, others may be found secondarily liable if they had some role in causing the corporate
23 trustee to commit the breach of trust.'") (citing Shepard v. K.B. Fruit & Vegetable, Inc., 868 F.Supp.
24 703, 706 (E.D. Pa.1994)).

25       Therefore, liability for damages is joint and several among Defendants.  Defendant Elite, as
26 the PACA licensee and as the party to agreements in this case, is jointly and severally liable for
27 amounts owed under the crop growing agreement, the packaging agreement and the pipe repair.
28 Defendant Escamilla Sr. is jointly and severally liable, as a person responsibly connected to Elite

9

1 and as a guarantor under agreements in this case, for amounts owed under the crop growing
2 agreement, the packaging agreement and the pipe repair agreement. Defendants Jose Escamilla,
3 Wyrick and Escamilla Jr. are jointly and severally liable for amounts owed under the crop growing
4 agreement by virtue of being responsibly connected to Elite.

**Conclusion**

For the reasons set forth above, and for good cause shown, it is hereby recommended that Plaintiffs' Motion for Default Judgment be granted, and that default judgment be entered against: (1) Defendants Elite, Escamilla Sr., Jose Escamilla, Wyrick, and Escamilla Jr., jointly and severally, in favor of Plaintiff AFCM in the amount of $182,972.85 under the crop services agreement; (2) Defendant Elite in favor of Plaintiff AFCM in the amount of $140,935.04 under the weeding services agreement; (3) Defendants Elite and Escamilla Sr., jointly and severally, in favor of Plaintiff AFCM in the amount of $5,116.83 under the pipe repair agreement; and (4) Defendants Elite and Escamilla Sr., jointly and severally, in favor of Plaintiff FO-Farmer's Outlet in the amount of $53,603.07 under the packaging agreement.

Any party may serve and file specific written objections to this recommendation within ten (10) working days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: July 10, 2012

ELIZABETH D. LAPORTE
United States Magistrate Judge