IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AFCM, INC.; and FO-FARMER'S OUTLET, INC., | No. C 11-4677 CW |
| Plaintiffs, | ORDER DENYING DEFENDANT STEPHEN WYRICK'S MOTION TO VACATE AND SET ASIDE DEFAULT JUDGMENT, TO DISMISS THE COMPLAINT AND FOR SUMMARY JUDGMENT (Docket No. 94) |
| v. | |
| ELITE GLOBAL FARMING AND LOGISTICS, INC; RICHARD ESCAMILLA, SR.; JOSE ESCAMILLA; JOHN CREIGHTON; STEPHEN WYRICK; KENT CURLEY; DAVID GATTIS; AMBER RIGOR; and RICHARD ESCAMILLA, JR., | |
| Defendants. | |

_____/

Defendant Stephen Wyrick moves to vacate and set aside the default judgment entered against him, to dismiss the claims asserted against him by Plaintiffs AFCM, Inc. and FO-Farmer's Outlet, Inc. and for summary judgment on those claims. Plaintiffs oppose the motions. Having considered the papers filed by the parties, the Court DENIES Wyrick's motion to vacate the default judgment and DENIES his remaining requests as moot.

BACKGROUND

In the fall of 2010, Defendant Elite Global Farming and Logistics, Inc. (Elite), through Wyrick and Defendant Richard Escamilla, Sr., approached Thomas Angulo, Plaintiffs' president. Angulo Decl. ¶ 2. Wyrick and Escamilla proposed that Elite and AFCM enter into a joint venture to grow approximately 130 acres of crops for the 2010-11 farming season in Imperial Valley,

California, and then have Elite sell the crops on behalf of both parties. Id.

On November 1, 2010, Wyrick sent Angulo an email outlining Elite's proposal regarding the division of labor and responsibility for the crops. Id. at ¶ 3 & Ex. A. In the email, Wyrick stated what Elite would provide, what it would like AFCM to provide and asked Angulo for his thoughts on this. Id. In their complaint, Plaintiffs allege that AFCM and Elite did enter into an oral joint growing agreement, with the basic split of responsibilities as outlined in Wyrick's email. Compl. ¶ 23.

On January 11, 2011, Wyrick filed for Chapter 7 bankruptcy. Mot. at 1;[1] see also Docket No. 1, In re Stephen Frank Wyrick, Case No. 11-50240 (Bankr. N.D. Cal.) (hereinafter, In re Wyrick).[2] In his bankruptcy filing, he listed his address as 3376 Cienaga Road in Hollister, California. Docket No. 1, In re Wyrick.

After the crops were harvested and sold, Elite sent AFCM an accounting statement dated May 17, 2011, showing that AFCM was owed $167,188.43 for the crops. Angulo Decl. ¶ 4 & Ex. B; see also Compl., Ex. B.

Elite failed to pay AFCM its share of the proceeds for the crops. Id. at ¶ 5. On July 26, 2011, AFCM sent Elite a written notice of intent to preserve trust benefits under the Perishable Agricultural Commodities Act (PACA), alleging that Elite is obliged to hold these proceeds in trust for AFCM until full

---

[1] Wyrick has sworn to the truth of the contents of his motion under penalty of perjury. Mot. at 4.

[2] The Court takes judicial notice of the filings made in Wyrick's bankruptcy proceedings.

payment has been made.  Id. at ¶ 5 & Ex. C.  Wyrick was one of the
named recipients of this letter, which was sent to him at the
Cienaga Road address.  Id.

On September 21, 2011, Plaintiffs initiated the instant suit,
alleging that Wyrick was "a manager and/or direct or indirect
owner" of Elite and that he and others were "responsible for the
daily management and control" of Elite.  Compl. ¶ 9, 16.  In the
complaint, AFCM asserts the following claims against Wyrick:
(1) enforcement of PACA trust provisions and disgorgement (seventh
cause of action); (2) violation of the PACA and the California
Food and Agriculture Code (FAC) §§ 55631, et seq., for failure to
account and pay promptly (eighth cause of action); (3) conversion
(ninth cause of action); (4) unjust enrichment (tenth cause of
action); (5) constructive trust and disgorgement (eleventh cause
of action); (6) declaratory judgment (twelfth cause of action);
and (7) injunctive relief (thirteenth cause of action).

On November 2, 2011, Wyrick was personally served with the
summons at the Cienaga Road address.  Docket No. 17.

On November 28, 2011, Plaintiffs filed a motion for entry of
default against Wyrick.  Docket No. 41.  Plaintiffs served a copy
of the motion upon Wyrick at the Cienaga Road address.  Docket No.
41-2.

On November 30, 2011, the Clerk entered default against
Wyrick.  Docket No. 43.  Plaintiffs served a notice of entry of
default on Wyrick at the Cienaga Road address.  Docket No. 44.

On February 23, 2012, Angulo and his counsel had a conference
call with Defendants Creighton and Curley and their attorney.
Angulo Decl. ¶ 7.  During the conference call, Creighton and

3

United States District Court
For the Northern District of California

Curley stated that Elite was established by Wyrick, who provided
the initial vegetable seed, land and equipment for the business,
and that he, along with Richard Escamilla and other members of the
Escamilla family, made the decisions on who Elite did business
with and which creditors were paid.  Id. at ¶¶ 7-8.  Angulo had
been given the same information during the course of AFCM's
dealings with Elite.  Id. at ¶ 9.

On May 25, 2012, Plaintiffs moved for default judgment
against Elite, Wyrick and Defendants Richard Escamilla, Sr., Jose
Escamilla and Richard Escamilla, Jr.  Docket No. 68.  They served
Wyrick with a copy of this motion at the Cienaga Road address.
Docket No. 68-5.

This Court referred the motion to a Magistrate Judge for a
report and recommendation.  Docket No. 69.  The Magistrate Judge
set a hearing on Plaintiffs' motion for July 10, 2012.  Docket No.
70.  Plaintiffs served Wyrick with notice of the hearing at the
Cienaga Road address.  Docket No. 72.

On July 5, 2012, Wyrick called Plaintiffs' counsel.
Anastassiou Decl. ¶ 7.  He asked her about the hearing that was
scheduled for July 10, 2012 and questioned her as to how he could
be held liable for Elite's debt when he was Elite's employee and
not its owner or officer.  Id.  He did not tell her that he had a
new address or that he had problems receiving the documents in
this case.  Id. at ¶ 8.

On July 10, 2012, the Magistrate Judge held a hearing on the
motion for default judgment.  Docket No. 75.  Neither Wyrick nor
any of the other Defendants appeared at the hearing.  Id.  On that
date, the Magistrate Judge filed a report, recommending that the

4

Court grant Plaintiffs' motion for default judgment.  Docket No.
76.  Plaintiffs served a copy of the report and recommendation on
Wyrick at the Cienaga Road address.  Docket No. 77.

On July 19, 2012, Wyrick filed a declaration in opposition to
the motion for default judgment.  Docket No. 80.  In his
declaration, he asked to be dismissed from the lawsuit.  He
attested, "When I was originally served for this lawsuit I spoke
to my former employer, Richard Escallia [sic] Sr. and he told me
he would take care of having me removed from the action."  Id.  He
stated, "My family and I lost our home to foreclosure in May 2012
and moved to a new house," and that "it takes a long time for my
mail to be forwarded and delivered so I was never served any
paperwork at our new home until just days before a default
judgment was scheduled to be entered."  Id.  He also stated, "I
have been, and continue to be in active bankruptcy," and could
therefore not afford to hire an attorney to represent him in this
matter.  Id.  He further stated that he "was never an owner or
even a board member of Elite Global" or a "decision maker, or
responsible party for any contract elite [sic] engaged in" and
that he "was only an employee" of Elite.  Id.

Wyrick had emailed a copy of this document to Plaintiffs on
July 16, 2012.  Anastassiou Decl. ¶ 9 & Ex. A.  He also mailed
Plaintiffs a copy of this letter, which they received on July 18,
2012, in an envelope bearing a return address of 113 Best Road in
Hollister, California.  Id. at ¶ 10.  Wyrick had not previously
informed Plaintiffs or indicated that he had a mailing address
other than the Cienaga Road address.  Id.  Prior to receiving this
letter, Plaintiffs regularly served Wyrick with copies of the

5

relevant documents filed in this case at the Cienaga Road address
and these documents were never returned as undeliverable.  Id. at
¶¶ 3-6.  The Best Road address was not included in Wyrick's filing
with the Court.

On August 7, 2012, the Court adopted the Magistrate Judge's
report and recommendation and addressed Wyrick's filing.  Docket
No. 81.  The Court stated,

> He admits that he was served with the complaint, but
> states that he relied upon a co-Defendant to take care
> of it. He indicates that he did receive later documents
> from the Court, although he did not receive them timely
> at his new address. However, he did not, and still does
> not, provide a new address. He also implies that he has
> filed a bankruptcy petition. If he has, he may be
> entitled to a stay of these proceedings, but he provides
> no information about his purported bankruptcy filing.
> Otherwise, he provides no meritorious objection to the
> Report and Recommendation and the Court adopts it in
> every respect. If Defendant Wyrick has not filed for
> bankruptcy, he may file a motion for relief from
> judgment and a motion to set aside his default, if he
> has other grounds to do so.

Id. at 1-2.

On August 20, 2012, Wyrick filed the instant motion to vacate
and set aside the default judgment, to dismiss the claims against
him and for summary judgment.  Docket No. 94.

Plaintiffs oppose Wyrick's motion.  Docket Nos. 84, 87, 89.[3]

Wyrick did not file a reply in support of his motion.

LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that a court
"may set aside a default judgment under Rule 60(b)."  Rule 60(b)

United States District Court
For the Northern District of California

---

[3] Plaintiffs' opposition papers were filed before the Court
received Wyrick's motion papers.

enumerates the following grounds upon which a motion for relief

from an order or judgment may be made:

> 1) mistake, inadvertence, surprise or excusable neglect;
>
> 2) newly discovered evidence which by due diligence
> could not have been discovered before the court's
> decision;
>
> 3) fraud by the adverse party;
>
> 4) the judgment is void;
>
> 5) the judgment has been satisfied; or
>
> 6) any other reason justifying relief.

The Ninth Circuit has stated that the three factors that

govern lifting entry of default for good cause under Rule 55(c)

also govern the vacating of a default judgment under Rule 60(b)(1)

for excusable neglect or mistake.  TCI Group Life Ins. Plan v.

Knoebber, 244 F.3d 691, 696-97 (9th Cir. 2001); see also United

States v. Signed Personal Check No. 730 of Yubran S. Mesle

(Mesle), 615 F.3d 1085, 1091 n.1 (9th Cir. 2010) (noting that this

test is applied more liberally in the Rule 55(c) context than in

the Rule 60(b) context because in the former situation "there is

no interest in the finality of the judgment with which to

contend").  These three factors, to which courts refer as the

"Falk factors," are (1) whether the defendant's culpable conduct

led to the default; (2) whether the defendant has a meritorious

defense; and (3) whether setting aside the default would prejudice

the plaintiff.  Brandt v. Am. Bankers, 653 F.3d 1108, 1111 (9th

Cir. 2011) (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir.

1984)).  The standard is disjunctive and "the district court is

free to deny relief if any of the three factors is true."  Brandt,

653 F.3d at 1111 (quoting Franchise Holding II, LLC v. Huntington

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  *Restaurants Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004))

2  (internal quotation marks and formatting omitted).  Thus, "a

3  finding of culpability on the part of a defaulting defendant is

4  sufficient to justify the district court's exercise of its

5  discretion to deny relief."  *Id.*  The "inquiry into 'excusable

6  neglect'" is "'at bottom an equitable one, taking account of all

7  relevant circumstances surrounding the party's omission.'"  *Id.* at

8  1111.

9     The party seeking to vacate the entry of default bears the

10  burden of demonstrating that these factors favor doing so.  *TCI*

11  *Group Life Ins. Plan*, 244 F.3d at 696.

12                          DISCUSSION

13  I.   Rule 60(b)(4)

14     Wyrick argues first that the default judgment should be set

15  aside pursuant to Rule 60(b)(4) because it violated the automatic

16  bankruptcy stay under 11 U.S.C. § 362 and thus was void as a

17  matter of law.  In relevant part, that statute serves to stay "any

18  act to collect, assess, or recover a claim against the debtor that

19  arose before the commencement of the" bankruptcy petition and "the

20  commencement or continuation" of any "action or proceeding against

21  the debtor that was or could have been commenced before the

22  commencement of the" petition "or to recover a claim against the

23  debtor that arose before the commencement of the" petition.  11

24  U.S.C. § 362(a)(1),(6).  However, it does not, and was not

25  intended, "to bar proceedings for post-petition claims that could

26  not have been commenced before the petition was filed."  *Taylor v.*

27  *First Federal Sav. & Loan Ass'n*, 843 F.2d 153, 154 (3d Cir. 1988).

28  Here, both the conduct underlying the claim and the accrual of the

claim itself occurred after Wyrick filed his bankruptcy petition.

Accordingly, this case was not subject to the automatic bankruptcy

stay and the judgment was not void as a result, as Wyrick

contends.

## II.   Rule 60(b)(1)

Wyrick also argues that good cause exists to set aside the

default judgment pursuant to Rule 60(b)(1).  The parties dispute

whether any of the three Falk factors is met here.

Under the first factor, "a defendant's conduct is culpable if

he has received actual or constructive notice of the filing of the

action and intentionally failed to answer."  TCI Group, 244 F.3d

at 697.  The Ninth Circuit has explained that "in this context the

term 'intentionally' means that a movant cannot be treated as

culpable simply for having made a conscious choice not to answer"

or for having demonstrated "simple carelessness."  Id.  Instead,

"to treat a failure to answer as culpable, the movant must have

acted with bad faith, such as an 'intention to take advantage of

the opposing party, interfere with judicial decisionmaking, or

otherwise manipulate the legal process.'"  Mesle, 615 F.3d at 1092

(quoting TCI Group, 244 F.3d at 697); see also id. at 1094

(concluding it was error to find a defendant's conduct culpable

based on "his failure to act after being notified of the need to

do so, in the absence of any indication that he acted in bad

faith").  The Ninth Circuit has typically found culpability only

if "'there is no explanation of the default inconsistent with a

devious, deliberate, willful, or bad faith failure to respond.'"

Id. at 1092 (quoting TCI Group, 244 F.3d at 698); see also TCI

Group, 244 F.3d at 697 ("Neglectful failure to answer as to which

United States District Court
For the Northern District of California

the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not 'intentional.'").

Wyrick argues that his conduct was not culpable because he "was not given proper service and the time to which I could defend against this complaint."  Mot. at 4.  He also states that, after he was served with the complaint, he "assumed the matter was subject to the bankruptcy's automatic stay and bankruptcy process and no action was required," and that he had turned over the complaint to Elite and Richard Escamilla, Sr., who assured him that they would take care of the matter.  He states that his home had been foreclosed upon and that his mail was not forwarded to his new address until mid-July 2012 and that it was only then that he learned that Plaintiffs were continuing to prosecute claims against him, that a default had been entered against him and that they were seeking a default judgment.

However, Wyrick has not provided a credible, good faith explanation negating bad faith.  Many of the facts to which Wyrick has attested in the instant motion contradict his sworn statements elsewhere in the motion or in his earlier filing.  For example, although he states that he was not properly served with the complaint and thus was not given time to defend against it, Wyrick also acknowledges that he was served with the complaint and that he turned over defense of the action to Elite.

Further, although Wyrick's misunderstanding about the bankruptcy stay and his belief that Elite and Escamilla were resolving this action for him may provide a good faith explanation

for his failure to respond initially to the complaint in a timely
fashion, they do not explain his failure to address the default
entered against him for more than seven months and he has not
provided a credible explanation for this delay.  The motion for
entry of default and the default itself were filed and served upon
Wyrick at the Cienaga Road address in November 2011.  Through
those filings, as he acknowledges in his motion, Wyrick reasonably
should have known that the case was proceeding against him,
despite his belief about the bankruptcy stay and the assurances of
Elite and Escamilla.  In his July 19, 2012 declaration, Wyrick
attested that his home was foreclosed upon in May 2012 and that
his family had to move to a new address at that time.  Thus,
Wyrick's statement in the present motion that he did not receive
the motion for entry of default and the entry of default until
mid-July due to the foreclosure is not credible.

In addition, Wyrick's representation that he did not receive
the other filings until "mid-July" is also not credible.  As
previously noted, he called Plaintiffs' counsel on July 5, 2012
regarding the motion for default judgment and hearing on that
motion.  Anastassiou Decl. ¶¶ 7-8; see also id. at ¶ 12 & Ex. C
(letter from Wyrick's bankruptcy counsel to Plaintiffs' counsel
acknowledged the telephone conversation took place on that date).[4]

---

[4] The Court notes that there are other contradictions between
Wyrick's various sworn representations.  For example, he states in
the instant motion that, had he known that this action was not
subject to the bankruptcy stay or that Elite was not resolving the
action, he would have immediately addressed the matter with his
attorneys.  Mot. at 1.  However, in his prior filing, he asked
that this action be dismissed, and represented that he could not
afford a lawyer to represent him in this matter.  Docket No. 80.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Further, to the extent that Wyrick appears to blame

2    Plaintiffs for sending him notices at the Cienaga Road address,

3    and states that Plaintiffs continue to send him service copies at

4    his former address, the Court notes that Wyrick never updated his

5    address in his bankruptcy case and that he continues to be served

6    with documents in that case at that address.  See, e.g., Docket

7    Nos. 58-59, In re Wyrick (September 12, 2012 Order Discharging

8    Debtor and certificate of service upon Wyrick at the Cienaga Road

9    address).  Since they were provided notice of his new address,

10   Plaintiffs have served Wyrick at that address.  See, e.g., Docket

11   No. 83-1.

12       Thus, Wyrick has not offered a credible and good faith

13   explanation for his failure to answer.  Considering the facts of

14   this case, including that Wyrick's various sworn representations

15   materially contradict each other and suggest bad faith conduct,

16   the Court finds that Wyrick has not shown good cause to set aside

17   the default judgment and DENIES his motion.  Accordingly, the

18   Court need not reach the other Falk factors.

19       The Court notes, however, that to the extent that Wyrick

20   asserts that he cannot be held personally liable under PACA for

21   the actions of Elite, Plaintiffs have offered substantial evidence

22   that Wyrick did exercise sufficient control over Elite to incur

23   such liability.  See Sunkist Growers v. Fisher, 104 F.3d 280, 283

24   (9th Cir. 1997) ("An individual who is in the position to control

25   the trust assets and who does not preserve them for the

26   beneficiaries has breached a fiduciary duty, and is personally

27   liable for that tortious act . . . [A] PACA trust in effect

28   imposes liability on a trustee, whether a corporation or a

12

United States District Court
For the Northern District of California

1    controlling person of that corporation, who uses the trust assets
2    for any purpose other than repayment of the supplier.") (internal
3    citation omitted).  This includes testimony from a number of
4    witnesses with knowledge of Wyrick's role in Elite and Wyrick's
5    own emails, in which he directly participated in negotiating the
6    contract at issue here.
7         Further, although, in general, setting aside a default is
8    considered prejudicial only if the opposing party's "ability to
9    pursue his claim will be hindered," such as through "loss of
10   evidence, increased difficulties of discovery, or greater
11   opportunity for fraud or collusion," TCI Group, 244 F.3d at 701
12   (citations omitted), under the circumstances of the instant case,
13   the delay alone constitutes prejudice.  Plaintiffs assert claims
14   under PACA, which was created in 1930 "primarily for the
15   protection of the producers of perishable agricultural products--
16   most of whom must entrust their products to a buyer or commission
17   merchant who may be thousands of miles away, and depend for their
18   payment upon his business acumen and fair dealing." In re
19   Kornblum & Co., 81 F.3d 280, 283 (2d Cir. 1996) (quoting H.R. Rep.
20   No. 1196, 84th Cong., 1st Sess. 2 (1955)).  "Congress amended the
21   statute in 1984 to add an additional remedy: the perishable
22   commodities or proceeds from the sale of those commodities are
23   held in trust by the dealer for the benefit of the unpaid seller
24   until full payment is made." Sunkist Growers, 104 F.3d at 282
25   (citation omitted).  At that time, the relevant House report noted
26   that prompt payment to producers of crops, such as AFCM, is an
27   important concern:
28

> Producers and shippers of perishable commodities are, for the most part, small size businesses. The process of growing, harvesting, packing and shipping perishables is a real gamble; costs are high, capital is tied up in farm land and machinery, and returns are delayed until the crop is sold. If the grower-shipper cannot realize any returns on the sale of the crop when due, he may not be able to survive.

H. Rep. No. 98-543, 98th Cong., 1st Sess. 5 (1983). Delays are also problematic because, once funds in a trust "are dissipated, it is all but impossible to effect recovery." Id. Thus, here, it would be unduly prejudicial to AFCM to delay its ability to recover based on Wyrick's culpable failure to participate in these proceedings in a timely fashion.

CONCLUSION

For the reasons set forth above, the Court DENIES Wyrick's motion to vacate and set aside the default judgment and DENIES AS MOOT his motion to dismiss and for summary judgment (Docket No. 94).

IT IS SO ORDERED.

Dated: 3/29/2013

CLAUDIA WILKEN
United States District Judge